**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHN DOUGAL, III,

Plaintiff,

- v -

Civ. No. 9:26-CV-150
(AJB/DJS)

J. PEREZ and GEE,

Defendants.

**APPEARANCES:** **OF COUNSEL:**

JOHN DOUGAL, III
Plaintiff, *Pro Se*
24-R-2015
Greene Correctional Facility
P.O. Box 975
Coxsackie, New York 12051

HON. LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

RACHAEL OUIMET, ESQ.
LAUREN ROSENBERG, ESQ.
Assistant Attorney General

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER

Pro se Plaintiff brought this action, pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his medical needs while he was incarcerated at Cayuga Correctional Facility. Dkt. No. 1, Compl. Presently pending is a Motion to Dismiss filed by Defendant Gee based on a lack of personal involvement. Dkt. Nos. 15

& 15-1, Def.'s Mem. of Law at pp. 11-13. Defendant Gee also seeks summary judgment based on the alleged failure to exhaust administrative remedies as to him. Def.'s Mem. of Law at pp. 6-10.[1] Plaintiff opposes the Motion. Dkt. No. 29, Pl.'s Opp. Defendant filed a Reply. Dkt. No. 30.

For the reasons set forth below, the Court recommends that the Motion to Dismiss Defendant Gee as a Defendant be granted.

## I. LEGAL STANDARD UNDER FED. R. CIV. P. 12

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The Court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

[1] Defendant Perez does not seek dismissal at this time.

conclusory statements, do not suffice." *Id.* (citation omitted). A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Nonetheless, a *pro se* complaint must state a plausible claim for relief. *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).

## II. ANALYSIS

The Complaint alleges that Plaintiff suffers from opioid use disorder. Compl. at ¶ 8. It further alleges that in 2023 while housed at an inpatient treatment center he was prescribed medication assisted treatment ("MAT") for his condition. *Id.* at ¶ 9. Following Plaintiff's incarceration with the Department of Corrections and Community Supervision, Plaintiff initially declined participation in MAT, *id.* at ¶ 13 but eventually requested placement in the program at Cayuga Correctional Facility. *Id.* at ¶ 16. Plaintiff was evaluated for the program, but it was determined that he would not be able to participate. See *id.* at ¶¶ 17-24. Plaintiff alleges that denying his participation in MAT constitutes deliberate indifference to his medical needs. *Id.* at ¶¶ 32-36; *see also* Dkt. No. 5 at pp. 10-12.

A basic premise of liability under section 1983 is that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). As such, an individual is liable only for his own personal involvement in a violation of constitutional rights. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

Defendant Gee, the Superintendent at Cayuga Correctional Facility during the relevant time, seeks dismissal based on lack of personal involvement. Def.'s Mem. of Law at pp. 11-13. The Complaint sues Gee on the theory that he "is responsible for the supervision, training, and conduct of staff, including defendant Perez, under his authority. Compl. at ¶ 6. The Second Circuit, however, has long recognized that liability under section 1983 requires "more than the linkage in the prison chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

The Complaint itself alleges that what he claims was denied was a specific medical treatment. Compl. at ¶¶ 33-36. There is no allegation that Gee had the authority to direct Plaintiff's admission to the MAT program. *See generally* Compl. There is also no allegation that Gee has a medical background that would have enabled him to understand the medical risk posed to Plaintiff by the allegations he makes. *Id.* Absent such allegations, Plaintiff cannot establish that Gee was personally involved in medical decisions underlying his claim. *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002). Nor does the fact that Gee addressed grievances filed by Plaintiff render him personally involved in the actions taken by other individuals. *Weston v. Bayne*, 2023 WL 8435998, at *5 (N.D.N.Y. June 28, 2023), *report and recommendation adopted*, 2023 WL 8183219 (N.D.N.Y. Nov. 27, 2023) (citing cases); *Henry v. Lempke*, 680 F. Supp. 2d 461, 464 (W.D.N.Y. 2010) (citing cases); *Joyner v. Greiner*, 195 F. Supp. 2d at 506. While Plaintiff also suggests that personal involvement is established because he wrote letters to Gee, Pl.'s Opp. at p. 34, that is not sufficient to establish liability under section

1983. *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (citing cases). "Ample Second Circuit case law makes clear that a plaintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 637 (S.D.N.Y. 2016).

A supervisory official "may not be held liable for damages merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("After the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation."). The alleged failure to remedy a wrong committed, as Plaintiff alleges as to Gee, is insufficient after *Tangreti*, to establish his personal involvement. *Logan v. Graham*, 2021 WL 4440344, at *4-5 (N.D.N.Y. Sept. 28, 2021).

Dismissal based on the lack of personal involvement, therefore, is warranted.[2]

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 15) be **GRANTED**; and it is

[2] In light of this recommendation, the Court need not fully address the Motion for Summary Judgment based on exhaustion of administrative remedies. *See* Def.'s Mem. of Law at pp. 6-10. Were the Court to consider that question, it would recommend denial of the Motion. Plaintiff clearly sought to exhaust administrative remedies regarding his placement in MAT. Dkt. No. 15-15, Ex. E. Defendant Gee argues that those grievances did not specifically address his involvement in that decision. Def.'s Mem. of Law at p. 9. The PLRA, however, does not "imposes a name all defendants requirement." *Jones v. Bock*, 549 U.S. 199, 217 (2007). Given that Plaintiff concededly grieved his medical indifference claims, there is at the very least a factual question that should preclude granting summary judgment.

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS[3] WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

Date: October 1, 2026
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

KeyCite Yellow Flag
Distinguished by Washington v. Morley, S.D.N.Y., September 20, 2024

2023 WL 8435998
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Atiq WESTON, a/k/a Atiq Akeem Weston, Plaintiff,
v.
C. BAYNE, et al., Defendants.

9:22-CV-621 (LEK/ATB)
|
Signed June 28, 2023

**Attorneys and Law Firms**

ATIQ WESTON, Plaintiff, pro se.

OLIVIA R. COX, Asst. Attorney General, for Defendants.

**REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

***1** This matter has been referred to me for Report-Recommendation by Senior District Judge Lawrence E. Kahn, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges Eighth Amendment medical indifference claims against the defendants. (Dkt. No. 1). Presently before the court is the defendants' motion to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 15). Plaintiff has responded in opposition to the motion. (Dkt. No. 17).

**I. Summary of Complaint**

Plaintiff arrived at Upstate Correctional Facility ("C.F.") on February 15, 2022. (Dkt. No. 1 at CM/ECF 7). On February 25, 2022, plaintiff wrote a letter to New York State Department of Corrections and Community Supervision ("DOCCS") Chief Medical Officer John Morley, in which he explained his medical history and requested MRI and EEG scans. (Dkt. No. 1 at CM/ECF 8). In the letter, plaintiff further explained that he was experiencing "nerve damage, dizziness, and chronic headaches (migraines)" and that he had not received "any immediate medical evaluations[.]" (*Id.* at CM/ECF 9-10). Plaintiff alleges, however, that he was seen at some point by a medical nurse during a morning sick call and the nurse informed him he would be scheduled to see a medical provider in the future. (*Id.* at CM/ECF 11).

On March 14, 2022, plaintiff filed a grievance complaint with defendant Incarcerated Grievance Program [1] ("IGP") Supervisor Bayne, in which plaintiff asserted he was not "receiving prioritized medical care for very serious health conditions." (Dkt. No. 1 at CM/ECF 12). Plaintiff further complained that his headaches were beginning to cause intense pressure in his head, his daily dizziness was continuing, and his worsening nerve damage was causing daily tremors extending from his head to his stomach. (*Id.*). Plaintiff asserted that he had not been "seen by a registered nurse or doctor for ... almost one month (30 days)." (*Id.* at CM/ECF 13). He requested an immediate evaluation by medical personnel, EEG scans, and MRI scans. (*Id.* at CM/ECF 14).

1 The program was formerly known as the "Inmate Grievance Program," but has recently been renamed.

On March 31, 2022, plaintiff contacted the Office of Special Investigation, by telephone, to make a medical negligence complaint which included "a summary of the medical negligence history and existing symptoms to [sic]." (*Id.* at CM/ECF 14). On the same day, the Incarcerated Grievance Review Committee [2] ("IGRC") held a hearing concerning plaintiff's medical negligence complaint. (Dkt. No. 1 at 14). The IGRC reviewed plaintiff's medical records and determined his complaints were chronic. (Dkt. No. 1-2, Ex. 4). They noted plaintiff had "been seen and assessed for this complaint on [two] occasions since arriving at Upstate." (*Id.*). They further noted plaintiff "has a pending appointment to see the provider in the near future." (*Id.*). On April 5, 2022, plaintiff appealed this determination to the Superintendent of Upstate C.F., defendant Uhler. (*Id.*).

2 The program was formerly known as the "Inmate Grievance Review Committee," but has recently been renamed.

***2** On April 8, 2022, defendant Nurse Administrator ("NA") Downer visited plaintiff's cell to investigate plaintiff's March 31, 2022 complaint. (Dkt. No. 1 at CM/ECF 16). Plaintiff informed NA Downer that his medical conditions "still exist[ed] and [were] worsening." (*Id.*). NA Downer asked plaintiff "whether [he had] been filing any sick call requests"

and plaintiff informed her he had filed regular sick calls, emergency sick calls, and written letters. (*Id.*). Plaintiff requested MRI/EEG scans from NA Downer. (*Id.*). On April 10, 2022, plaintiff wrote a follow-up letter to NA Downer reiterating his health concerns and again requesting MRI/EEG scans. (*Id.*).

On April 12, 2022, Superintendent Uhler denied plaintiff's April 5, 2022 grievance appeal. (Dkt. No. 1 at CM/ECF 17). Uhler found “no evidence of malfeasance” and noted plaintiff had “been referred to the Facility Provider.” (*Id.* at CM/ECF 18). On April 13, 2022, plaintiff appealed the grievance denial to the Central Office Review Committee (“CORC”). (*Id.*). Plaintiff states he has not yet received a response from CORC regarding this appeal. (*Id.* at CM/ECF 21).

On April 26, 2022, plaintiff called the Office of Special Investigations (“OSI”) to complain about his medical care. (*Id.* at CM/ECF 19). During the phone call, plaintiff “explained his worsening medical conditions along with a description of the daily dizziness & nerve tremors that feel like shivers in his head, chest and stomach that occur daily.” (Dkt. No. 1 at 19). On May 9, 2022, one of plaintiff's family members also lodged a complaint with OSI. [3]

3 This complaint also involved allegations of excessive use of force not relevant to the present case.

On May 20, 2022, NA Downer visited plaintiff's cell again to investigate a medical negligence complaint. (*Id.* at CM/ECF 20). Plaintiff informed NA Downer that he was still experiencing symptoms and had “not been scheduled for a medical call-out to see a medical provider since [his] arrival at Upstate C.F. on 02/15/2022.” (*Id.*). NA Downer then informed plaintiff that “ ‘she’ would ‘personally’ ensure that [he] was scheduled to see a medical provider very soon.” (*Id.*).

## II. Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is “plausible on its face.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). “[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,” do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant “fair notice of what the ... claim is and the grounds upon which it rests.” *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc.*, 62 F.3d at 72 (holding the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing inter alia *County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Servs., LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## III. Discussion

### A. Legal Standards

#### 1. Medical Deliberate Indifference

***3** In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege “acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.” *Estelle v. Gamble*,

429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

**a. Objective Element**

There is a two-part inquiry to determine whether an alleged deprivation is "objectively serious." *Benjamin v. Pillai*, 794 F. App'x 8, 11 (2d Cir. 2019) (citing *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmate's health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Salahuddin*, 467 F.3d at 279-80 (citing *Farmer v. Brennan*, 511 U.S. 825, 844-47 (1994)).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Benjamin*, 794 F. App'x at 11 (citing *Salahuddin*, 467 F.3d at 280). The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Salahuddin*, 467 F.3d at 280 (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith*, 316 F.3d at 185-86). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Benjamin*, 794 F. App'x at 11. The court in *Benjamin* reiterated that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Benjamin*, 794 F. App'x at 11 (citing *Smith*, 316 F.3d at 185).

**b. Subjective Element**

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Benjamin*, 794 F. App'x at 11 (citing *Hathaway v. Coughlin*, 511 U.S. 825, 553 (2d Cir. 1996)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 835-37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition, that the charged official possessed "a state of mind that is the equivalent of criminal recklessness." *Benjamin*, 794 F. App'x at 11 (quoting *Hathaway*, 99 F.3d at 553).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Abreu v. Lipka*, 778 F. App'x 28, 32 (2d Cir. 2019) (quoting *Smith*, 316 F.3d at 184). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer*, 511 U.S. at 837). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court in *Salahuddin* stated the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d at 281.

***4** Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Riddick v. Maurer*, 730 F. App'x 34, 38 (2d Cir. 2018) (quoting *Chance*, 143 F.3d at 703). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.*; *see also* *Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

**2. Personal Involvement/Respondeat Superior**

The Second Circuit recently clarified the standard for personal involvement of individuals in a § 1983 action. *See* *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). Pursuant to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit in *Tangreti* made clear that in order to attach liability to an individual, regardless of supervisory status, a plaintiff must

> plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 .... "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676). Quoting a Tenth Circuit case, the *Tangreti* court stated that "after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges." *Id.* (alterations in original) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010)) (internal quotation marks omitted) (emphasis added, other citations omitted). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

**B. Analysis**

Defendants argue that plaintiff failed to sufficiently allege their personal involvement in the purported constitutional violations set forth in the complaint. (Defs.' Mem. at 5-8). For the reasons stated below, the court agrees that plaintiff failed to allege personal involvement with respect to defendants Bayne, Uhler, and Morley, and dismissal is therefore warranted as to these defendants. However, the court concludes that plaintiff did sufficiently allege the personal involvement of defendant NA Downer for purposes of initial pleading.

***5** Plaintiff alleges that defendant Bayne was the IGP Supervisor at Upstate C.F. (Dkt. No. 1-3 at CM/ECF 12). On March 14, 2022, plaintiff alleges he filed a grievance complaint with Bayne, in which plaintiff outlined his medical issues[4] and requested MRI/EEG scans. (Dkt. No. 1 at CM/ECF 12-13). He specifically alleges that Bayne "failed to properly consider, investigate and address the issues that [were] presented to the IGRC office." (Dkt. No. 1-3 at CM/ECF 12). Plaintiff asserts that Bayne "chose to instead intentionally ignore the seriousness of plaintiff's medical conditions and make him wait for treatment." (Dkt. No. 1-3 at CM/ECF 12). Plaintiff does not allege any other involvement by defendant Bayne.

4 Plaintiff alleges his letter complained about "very bad headaches (migraines) to where I begin to feel intense pressure in my head, daily dizziness, and worsening nerve damage to where I now feel tremors (shaking) in nerves that extend from my head to my stomach, on a daily basis." (Dkt. No. 1 at CM/ECF 12).

Plaintiff further alleges that, on March 17, 2022, defendant Uhler, the Superintendent of Upstate C.F., denied plaintiff's grievance appeal after reviewing plaintiff's medical record and finding "no evidence of malfeasance." (Dkt. No. 1-1, Ex. 6). In his response, Uhler also noted plaintiff "has been referred to the Facility Provider." On April 5, 2022, plaintiff appealed another grievance to Superintendent Uhler.[5] (Dkt. No. 1-1, Ex. 4). Plaintiff alleges that Uhler was negligent in his supervision of his subordinates but does not allege any actionable conduct specifically performed by Uhler. (Dkt. No. 1-3 at CM/ECF 12-13).

5 Uhler's response to the second grievance complaint was not included in the submissions to the court.

Even under the broader, pre-*Tangreti* standards with respect to personal involvement, playing a role in the administrative denial of a prison inmate's grievance was insufficient to establish personal involvement under section 1983, particularly when the grievance involved medical care and the reviewer has no medical training. *See, e.g.*, *Hardy v. Diaz*, No. 9:08-CV-1352 (GLS/ATB), 2010 WL 1633379, at *7 & n.13 (N.D.N.Y. Mar. 30, 2010) (citing inter alia *Manley v. Mazzuca*, No. 01-CV-5178, 2007 WL 162476 at *10 (S.D.N.Y. Jan. 19, 2007) (collecting cases)), *report and recommendation adopted*, 2010 WL 1633390 (N.D.N.Y. Apr. 21, 2010); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) ("[A] prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have been 'personally involved' if he does so" by affirming denial of a grievance against the two doctors for failing to provide care.).[6] Particularly under the current *Tangreti* standards in the Second Circuit, IGP Supervisor Bayne and Superintendent Uhler cannot be found to be personally involved in the alleged denial of medical care by virtue of their role in addressing plaintiff's grievance. *See, e.g.*, *Brown v. Dep't of Corr.*, No. 3:16-CV-00376, 2021 WL 124417, at *17-18 (D. Conn. Jan. 13, 2021) (plaintiff's claim that Warden Maldonado's signature appears on plaintiff's grievance denial regarding his mental health treatment is insufficient to establish that Maldonado's " 'own individual actions' rises to a Constitutional violation under the Eighth Amendment") (citing *Tangreti*, 983 F.3d at 612).

6 *See also* *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (finding prison superintendent with no medical training who deferred completely to a prison doctor in ruling on a grievance regarding medical care, while perhaps negligent, was not "deliberately indifferent"); *Lewis v. Cunningham*, No. 05-CV-9243, 2011 WL 1219287, at *5 (S.D.N.Y. Mar. 14, 2011) ("[A]n administrator's response to a medical issue is insufficient to establish deliberate indifference if the administrator himself never provided medical care, since prison administrators may defer to medical staff regarding medical treatment of inmates.") (internal citation omitted), *aff'd*, 483 F. App'x 617 (2d Cir. 2012).

***6** Plaintiff next alleges that, on February 25, 2022, he wrote a letter to defendant Morley, the Chief Medical Officer of DOCCS, where he explained his medical history and requested MRI and EEG scans. (Dkt. No. 1 at CM/ECF 8). The crux of plaintiff's claims against Dr. Morley is that he was liable for failing to sufficiently remedy the wrongs of their subordinates, despite having received notice from plaintiff of the alleged misconduct. These contentions suggest the pre-*Tangreti* standard for establishing personal involvement of a supervisory official--contemplating personal involvement where an official, after being informed of the violation through report or appeal, failed to remedy the wrong. *See* *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). In the wake of *Tangreti*, these allegations are insufficient to establish personal involvement of a supervisory official,[7] and plaintiff has otherwise failed to allege facts plausibly suggesting Dr. Morley's personal involvement in the alleged conduct giving rise to plaintiff's Eighth Amendment claims. *See, e.g.*, *McTerrell v. Koenigsmann*, No. 18-CV-1028, 2021 WL 5772484, at *11 (W.D.N.Y. Aug. 18, 2021) (plaintiff only alleges that he filed complaints about his medical treatment with the DOCCS medical director; "[w]ithout more, that is insufficient to adequately plead [the medical director's] subjective culpability" and personal involvement under *Tangreti*), *report and recommendation adopted*, 2021 WL 4549168 (W.D.N.Y. Oct. 5, 2021); *Gardner v. Koenigsmann*[8], No. 21-CV-10185, 2022 WL 1058498, at *2 (S.D.N.Y. Mar. 30, 2022) (the allegation that plaintiff complained to the DOCCS medical director at some point after not receiving a surgical consultation is insufficient, under *Tangreti*, to implicate the medical director in any constitutional violation).

7 *See* *Hendrix v. Annucci*, No. 9:20-CV-0743 (GTS/TWD), 2021 WL 4405977, at *14 (N.D.N.Y. Sept. 27, 2021) (finding no personal involvement where plaintiff's theory of supervisory liability relied on the factors outlined in *Colon*, and recognizing the new standard for establishing personal liability under *Tangreti*).

8 The caption uses the spelling of the party name as *Koeningsman* as opposed to the correct spelling of *Koenigsmann*.

However, construing the complaint in a light most favorable to the non-moving party, dismissal for lack of personal involvement is not warranted as to defendant NA Downer at this juncture. Plaintiff alleges NA Downer was a nurse administrator at Upstate C.F. who investigated plaintiff's medical negligence complaints. (Dkt. No. 1 at CM/ECF 16,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

20). As part of her investigation, NA Downer personally visited plaintiff in his cell on two separate occasions. (Dkt. No. 1 at CM/ECF 16, 20). During her first visit with plaintiff on April 8, 2022, she "inquired as to whether [plaintiff's] medical conditions still existed." (*Id.*). Plaintiff alleges that he not only informed NA Downer that his conditions still existed, but that they were worsening. (*Id.*). Plaintiff alleges that NA Downer then "made notes on a writing pad concerning [his] requests for an MRI scan and EEG scan for [his] brain." (*Id.*). According to plaintiff's allegations, NA Downer returned to his cell on May 20, 2022, at which time she "personally" ensured that plaintiff would see a medical provider very soon. (*Id.* at CM/ECF 20).

The mere receipt, review, and response to an inmate's grievance does not rise to the level of personal involvement necessary to state a claim, and "allegations that a supervisor did not do enough *after* a constitutional violation has already occurred is not enough to show personal involvement of the supervisor in the violation of a prisoner's constitutional rights." *Jordan v. Gifford*, No. 3:19-CV-1628, 2022 WL 3106965, at *26 (D. Conn. Aug. 4, 2022) (citing inter alia *Lopez v. Chappius*, No. 6:17-CV-06305, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (noting that "the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement of a supervisor in the denial of a constitutional right")); *see also Thompson v. New York State Corr. & Cmty. Supervision*, No. 22-CV-6307, 2022 WL 4562318, at *7 (W.D.N. Y Sept. 29, 2022) (finding no personal involvement where a nurse administrator simply reviewed the inmate's medical records and responded to the inmate's complaint). However, to the extent NA Downer is alleged to have visited plaintiff on multiple occasions, inquired into the status of his medical condition, and reassured plaintiff that he would be treated by a medical provider, these allegations are sufficient, at this stage of the proceeding, to state a plausible claim that NA Downer was deliberately indifferent to plaintiff's medical condition. *See Gilhooly v. Quiros*, No. 3:21-CV-140, 2022 WL 252410, at *9 (D. Conn. Jan. 27, 2022) (denying motion to dismiss complaint against defendant Nurse Brennan, Health Service Grievance Coordinator, where plaintiff alleged that Nurse Brennan "visited plaintiff to discuss" his medical grievances, and purportedly ignored and/or interfered with the grievance process).

***7 WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 15) based upon Fed. R. Civ. P. 12(b)(6) be **GRANTED IN PART AND DENIED IN PART**, and it is further

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 15) be **GRANTED**, and the plaintiff's complaint **DISMISSED WITHOUT PREJUDICE**, as to defendants **Bayne, Uhler, and Morley**, and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 15) be **DENIED**, as to plaintiff's Eighth Amendment medical indifference claims asserted against defendant **Downer**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 8435998

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4440344
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Seth LOGAN, Plaintiff,
v.
Superintendent GRAHAM, Auburn Correctional Facility; and C.O. Pflueger, Auburn Correctional Facility, Defendants.

9:18-CV-0291 (ML)
|
Signed 09/28/2021

**Attorneys and Law Firms**

OF COUNSEL: KATHRYN DONNELLY, ESQ., LEVENE, GOULDIN LAW FIRM, Pro Bono Counsel for Plaintiff, 450 Plaza Drive, Vestal, New York 13850.

LETITIA A. JAMES, Attorney General for the State of New York, OF COUNSEL: AIMEE COWAN, ESQ., Assistant Attorney General, Counsel for Defendants, 300 South State Street, Suite 300, Syracuse, New York 13202.

**DECISION and ORDER**

MIROSLAV LOVRIC, United States Magistrate Judge

***1** Currently before the Court, in this civil rights action filed by Seth Logan ("Plaintiff") against Superintendent Graham and C.O. Pflueger ("Defendants"), is the Court's order to show cause why Defendant Graham should not be dismissed from this action pursuant to the Second Circuit's decision in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), and Defendants' eighth motion *in limine* to preclude Plaintiff from recovering compensatory damages for mental and emotional injuries. (Dkt. Nos. 99, 92.) For the reasons set forth below, Defendant Graham is dismissed and Defendants' eighth motion *in limine* is granted. [1]

1 This matter is before me on consent of the parties pursuant to 28 U.S.C. § 636(c) and Northern District of New York Local Rule 73.1. (Dkt. No. 44.)

**I. BACKGROUND**

Plaintiff commenced this action on March 8, 2018. (Dkt. No. 1.)

On March 6, 2019, Defendants moved for summary judgment. (Dkt. No. 28.) On February 21, 2020, United States District Judge David N. Hurd adopted the report and recommendation of the undersigned, and granted in part and denied in part Defendants' motion for summary judgment. (Dkt. No. 42.) Relevant here, the Court denied Defendants' motion requesting that Defendant Graham be dismissed from the action, finding that the Supreme Court's decision in *Iqbal* had raised questions about the applicability of the *Colon* factors when considering whether supervisory defendants may be considered personally involved in a constitutional violation pursuant to 42 U.S.C. § 1983. (Dkt. No. 40 at 39.) More specifically, the Court held that a supervising official could not be found liable, for merely rubber-stamping an administrative appeal, but could be found liable if the official proactively participated in reviewing the appeal. (Dkt. No. 40 at 41.) Further, the Court held that an issue of fact remained for trial because the record was devoid of an affidavit or declaration from Defendant Graham setting forth what, if any, involvement he had in reviewing Plaintiff's grievance appeals. (*Id.*)

On September 10, 2021, Defendants filed, *inter alia*, nine motions *in limine.* (Dkt. No. 92.) Among Defendants' requests, was Defendants' eighth motion *in limine*, which requested that Plaintiff be precluded from recovering compensatory damages for mental or emotional injury pursuant to 42 U.S.C. § 1997e(e). (Dkt. No. 92, Attach. 4 at 18-19.) On September 17, 2021, Plaintiff filed an opposition to four of Defendants' motions *in limine*, including Defendants' eighth motion *in limine.* (Dkt. No. 97.)

On September 20, 2021, the Court issued a text order directing Plaintiff to show cause, in writing, on or before September 27, 2021, why the Court should not *sua sponte* dismiss his action against Defendant Graham in light of *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). (Dkt. No. 99.)

On September 27, 2021, Plaintiff filed a response in opposition to the Court's order to show cause. (Dkt. No. 100.) In addition, on September 27, 2021, Defendants filed a letter brief in support of dismissing Defendant Graham. (Dkt. No. 101.)

***2** A trial is scheduled to commence in this matter on October 5, 2021. (Dkt. No. 96.)

## II. THE PARTIES' BRIEFING ON DEFENDANTS' EIGHTH MOTION *IN LIMINE*

### A. Defendants' Eighth Motion *in Limine*

Generally, Defendants argue that, in the absence of physical injury allegations, Plaintiff's emotional injury claims should be dismissed to the extent that he seeks compensatory damages for constitutional violations, pursuant to 42 U.S.C. § 1997e(e) (the "PLRA"). (Dkt. No. 92, Attach. 4 at 18.) Defendants argue that Plaintiff testified that he did not suffer any physical injury (Dkt. No. 28, Attach. 5 at 77) and courts in the Second Circuit have routinely held that even physical manifestations of emotional injuries are not "physical injuries" for purposes of the PLRA. (*Id.* at 18-19.) Defendants argue that, as a result, Plaintiff should be precluded from presenting testimony and evidence relating to compensatory damages for any alleged mental or emotional injuries suffered caused by the alleged constitutional violations. (*Id.* at 19.)

### B. Plaintiff's Response in Opposition

Generally, in opposition to Defendants' eighth motion *in limine*, Plaintiff argues that compensatory damages are a form of relief available to a successful plaintiff under 42 U.S.C. § 1983, and Plaintiff will ask the jury to award him compensatory damages based on his mental anguish and emotional distress suffered as a result of his claims. (Dkt. No. 97 at 5.) In addition, Plaintiff argues that additional corroboration is not required and Plaintiff's testimony alone may provide a sufficient basis for mental anguish and emotional distress damages. (*Id.*)

## III. THE PARTIES' BRIEFING ON THE COURT'S ORDER TO SHOW CAUSE

### A. Plaintiff's Response

Generally, in response to the Court's order to show cause why Defendant Graham should not be dismissed from the case, Plaintiff argues that an issue of fact remains for trial whether Defendant Graham merely rubber-stamped the hearing outcome on Plaintiff's grievance regarding the retaliatory nature of Defendant Pflueger's firing of him as a feed-up porter. (*See generally* Dkt. No. 100.) Plaintiff argues that Defendant Graham reviewed Plaintiff's other grievances and should be imputed with knowledge of inmate Agosto's complaint to the Office of the Inspector General. (*Id.* at 5.) As a result, Plaintiff argues that "there is a reasonable inference that Defendant Graham directly participated in the alleged constitutional violation, or created, or allowed to continue a policy or custom under which the violation occurred, i.e., to more adequately review the hearing decision or properly supervise staff." (*Id.*)

### B. Defendants' Response

Generally, in response to the Court's order to show cause, Defendants argue that Defendant Graham should be dismissed. (*See generally* Dkt. No. 101.) More specifically, Defendants argue that even if Defendant Graham proactively participated in reviewing Plaintiff's grievance, that is insufficient to establish personal involvement. (*Id.*) Defendants argue that Plaintiff's other grievances cannot form the basis of a supervisory claim against Defendant Graham because the underlying constitutional violations regarding those grievances have been dismissed. (*Id.* at 3.) In addition, Defendants argue that no discovery was completed related to inmate Agosto's complaint and there is no evidence in the record that Defendant Graham knew about the complaint, reviewed the complaint, or had any responsibility to act on the complaint. (*Id.*) Defendants argue that Plaintiff has not alleged that Defendant Graham was involved in Defendant Pflueger's alleged firing of Plaintiff from his position in retaliation for the grievance dated May 10, 2015. (*Id.* at 4.)

## IV. ANALYSIS

### A. DEFENDANTS' EIGHTH MOTION *IN LIMINE*

***3** The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury ..." 42 U.S.C. § 1997e(e).[2] "The Second Circuit has recognized that this provision is not a bar to all claims in which a physical injury has not been established, but is a bar to anything more than nominal damages and potentially punitive damages." *Walker v. Schult*, 463 F. Supp. 3d 323, 339-40 (N.D.N.Y. 2020) (Stewart, M.J.) (citing *Toliver v. City of New York*, 530 F. App'x 90, 93 n.2 (2d Cir. 2013); *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002); *Robinson v. Cattaraugus Cnty.*, 147 F.3d 153, 162 (2d Cir. 1998); *Lopez v. Zouvelos*, 13-CV-6474, 2015 WL 5657361, at *21 n.18 (E.D.N.Y. Sept. 23, 2015)).

2 Although Plaintiff is no longer incarcerated, 42 U.S.C. § 1997e(e) still applies because he was incarcerated when the action was commenced. *See*

> Harris v. Garner, 216 F.3d 970, 985 (11th Cir. 2000) (holding that because the plaintiffs were incarcerated when they commenced the action, notwithstanding the fact that they were released from confinement during the pendency of the action, 42 U.S.C. § 1997e(e) applied "with full force and effect to them."); *Kelsey v. Cnty. of Schoharie*, 04-CV-0299, 2005 WL 1972557, at *1-2 (N.D.N.Y. Aug. 5, 2005) (Homer, M.J.) (holding that § 1997e(e) is "clearly limit[ed] ... to individuals who are incarcerated when an action is commenced."); *see also Andujar v. Fischer*, 09-CV-0489, 2010 WL 786298, at *4 (N.D.N.Y. Mar. 2, 2010) (Mordue, C.J.) (holding that the plaintiff "was not confined at the time the suit was filed in 2009, he was released on parole, thus the statutory language of § 1997e(e) is inapplicable.").

The Second Circuit held that this statute encompasses federal civil rights actions brought to vindicate constitutional rights, noting—in *dicta*—that the weight of authority holds that it includes First Amendment claims. *Thompson v. Carter*, 284 F.3d at 417.

Plaintiff testified that he did not suffer any physical injury (Dkt. No. 28, Attach. 5 at 77:4-6), he is thus barred, pursuant to 42 U.S.C. § 1997e(e) from recovering compensatory damages. *See Amaker v. Goord*, 06-CV-490A, 2015 WL 3603970, at *1-2 (W.D.N.Y. June 5, 2015) (holding that "although the Court has no doubt that plaintiff suffered injury as a result of defendants' violation of his free exercise rights pursuant to the First Amendment," he was barred from seeking compensatory damages pursuant to 42 U.S.C. § 1997e(e) and was limited to nominal and punitive damages); *Eng v. Blood*, 04-CV-1146, 2008 WL 2788894, at *4 (N.D.N.Y. July 17, 2008) (Mordue, C.J.) (permitting "a narrowly tailored presentation of evidence of plaintiff's emotional and/or psychological condition ... reasonably related to the alleged retaliatory action for the limited purpose of the jury's consideration, if it is to give any, of nominal or punitive damages."). However, Plaintiff may recover nominal and/or punitive damages if there is a finding of liability for retaliation pursuant to the First Amendment.

As a result, Defendants' eighth motion *in limine* is granted.

**B. DEFENDANT GRAHAM**

After carefully considering the matter, Plaintiff's remaining claim against Defendant Graham is dismissed for the reasons stated in Defendants' letter brief. (Dkt. No. 101.) The following is intended to supplement, not supplant, Defendants' reasons.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

***4** Courts in this circuit routinely hold that "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 97-CV-2419, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Colon*, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement). Before the Supreme Court ruled in *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), the Second Circuit held that supervisory personnel may be considered "personally involved" only if

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright*, 21 F.3d at 501 (additional citation omitted)).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti*, 983 F.3d at 618.[3] The Second Circuit explained that, " 'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." *Id.* (quoting *Iqbal*, 556 U.S. at 676). "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test and mandates that a plaintiff must establish a violation against the supervisory official directly." *Fabrizio v. Smith*, 20-CV-0011, 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) (Lovric, M.J.) (collecting cases), *report and recommendation adopted*, 2021 WL 2211023 (N.D.N.Y. June 1, 2021) (Suddaby, C.J.).

3 Before *Tangreti*, various courts in the Second Circuit have postulated how, if at all, the *Iqbal* decision affected the five *Colon* factors which were traditionally used to determine personal involvement. *Pearce v. Estate of Longo*, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011) (Hurd, J.) (recognizing that several District Courts in the Second Circuit have debated *Iqbal*'s impact on the five *Colon* factors), *rev'd in part on other grounds sub nom., Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012) (summary order); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass *Iqbal*'s muster...."); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that *Iqbal* eliminated *Colon*'s personal involvement standard).

***5** It is undisputed that Defendant Graham was, at all times relevant to the remaining claim in this action, a supervisory official. Plaintiff's response to the order to show cause makes clear that his basis for establishing Defendant Graham's personal involvement is that after receiving Plaintiff's grievance, he failed to remedy Defendant Pflueger's wrong. (Dkt. No. 100.) However, in light of the Second Circuit's decision in *Tangreti*, this is insufficient to establish Defendant Graham's personal involvement. *See Johnson v. Cook*, 19-CV-1464, 2021 WL 2741723, at *12 (D. Conn. July 1, 2021) (holding that the warden's "sole action ... was to deny [the p]laintiff's grievance against Officer Sendzik after the incident involving Officer Sendzik's transphobic remarks had concluded. [The p]laintiff's allegation, which bespeaks of neither direct nor indirect involvement in Officer Sendzik's course of conduct, is insufficient to support a purported violation of [the [p]laintiff's ... rights."); *Walker v. Martuscello*, 18-CV-1189, 2021 WL 3173871, at *13 (N.D.N.Y. June 21, 2021) (Hummel, M.J.) (holding that "no evidence, admissible or otherwise, indicates that ... inmates were deprived of Jumu'ah services in 2015 based on Supt. Martuscello's 'own individual actions' " and thus, dismissing the plaintiff's claims against Supt. Martuscello), *report and recommendation adopted by* 2021 WL 3165362 (N.D.N.Y. July 26, 2021) (Sannes, J.); *Fabrizio*, 2021 WL 2211206, at *10 (holding that the "[p]laintiff's attempt to plead personal involvement based upon the denial of a grievance and/or appeals, lacks merit because it does not plausibly suggest '[t]he factors necessary to establish' a First Amendment retaliation claim."); *Smart v. Annucci*, 19-CV-7908, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) (holding "[t]hat Annucci and Joseph failed to act on [the p]laintiff's complaints, and that Venettozzi denied [the p]laintiff's administrative appeal, cannot support the inference that these [d]efendants, through 'their own individual actions, [have] violated the Constitution.' "). There is no evidence in the record or before the Court that Defendant Graham was involved in terminating Plaintiff from his position as a feed-up porter in retaliation for his grievance dated May 10, 2015.

As a result, Plaintiff's claim against Defendant Graham is dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' eighth motion *in limine* (Dkt. No. 92, Attach. 4 at 18-19) is **GRANTED** and Plaintiff is

precluded from recovering compensatory damages for mental and emotional injury at trial; and it is further

**ORDERED** that Plaintiff's claim against Defendant Graham is **DISMISSED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4440344

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.